NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210117-U

NO. 4-21-0117

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 23, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|     Petitioner-Appellee, | ) | No. 19JA3 |
|     v. | ) | |
| Craig L., | ) | |
|     Respondent-Appellant). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding the trial court's finding respondent was an unfit parent was not against the manifest weight of the evidence.

¶ 2   Respondent father, Craig L, appeals from the trial court's judgment terminating his parental rights to his daughter, A.L. (born February 20, 2017). On appeal, respondent argues the trial court's finding he was an unfit parent is against the manifest weight of the evidence. We disagree and affirm.

¶ 3                          I. BACKGROUND

¶ 4   Respondent and Michelle H. are the minor's biological parents. Michelle H.'s parental rights to the minor were terminated during the proceedings below pursuant to a final and irrevocable surrender. She is not a party to this appeal.

¶ 5                 A. Motion to Terminate Parental Rights

¶ 6    In December 2020, the State a filed motion to terminate respondent's parental rights. In its motion, the State alleged respondent was an unfit parent as he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) failed to make reasonable efforts to correct the conditions which were the basis for the removal of the minor within certain nine-month periods following the minor's adjudication, namely March 20, 2019, to December 20, 2019, and December 20, 2019, to September 20, 2020 (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress toward the return of the minor to him within certain nine-month period following the minor's adjudication, namely March 20, 2019, to December 20, 2019, and December 20, 2019, to September 20, 2020 (*id.* § 1(D)(m)(ii)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 7                                B. Fitness Hearing

¶ 8    In February 2021, the trial court held a fitness hearing. Respondent, who was serving a prison sentence, appeared via Zoom. He was represented by counsel who was present in the courtroom.

¶ 9    The State initially moved for the trial court to take judicial notice of a March 20, 2019, adjudicatory order and an April 10, 2019, dispositional order, which was granted over no objection. The State then presented testimony from Martha Dufner and Alyssa Williams.

¶ 10   Dufner testified she had been the supervisor on the minor's case since November 2019. Dufner explained her responsibilities as a supervisor included ensuring services were in place for the minor's parents and providing support to the minor's caseworkers. Dufner testified she spoke with the caseworkers who had been assigned to the minor's case and became familiar

with the case file. Dufner testified she also had the opportunity to speak with respondent on several occasions both in person and by telephone. Dufner testified Shannen Quell was the assigned caseworker from July 2019 to May 2020 and Alyssa Williams was the caseworker assigned immediately following Quell. Dufner noted Quell had since moved out of state.

¶ 11    Dufner testified about the minor being taken into DCFS care and placed with a foster family. The minor was removed from her mother's care after it was discovered her mother had overdosed on prescribed medication while the minor was alone in her care. After her removal, the minor could not be placed with respondent because he was residing at an inpatient adult rehabilitation center as part of a probation sentence which he received from a drug court program.

¶ 12    Dufner testified about three service plans created in this case as well as respondent's performance on those service plans. The first service plan covered January to July 2019, the second service plan covered July 2019 to January 2020, and the third service plan covered January 2020 to July 2020. Dufner testified the case file indicated the first service plan was given to respondent and discussed with him and all necessary referrals for services were made. In each of the service plans, it was recommended respondent cooperate with the agency assigned to monitor the welfare of the minor, attend visitation with the minor, obtain suitable housing and income, complete substance abuse treatment, and complete parenting classes. Dufner testified respondent's performance was consistently rated unsatisfactory on all the recommended services.

¶ 13    Dufner testified about an occasion when she personally reviewed the recommended services with respondent. Overall, Dufner testified to the following with respect to respondent's performance on the recommend services: (1) respondent's contact with the agency was "very sporadic"; (2) respondent attended only 7 of 38 visitations between July 2019 and May 2020, and his missed visitations were mostly "no-shows"; (3) there were largely no concerns with the

visitations which respondent attended with the exception of a November 2019 visitation when the minor "was kind of standoffish towards [respondent] in the visit, and he attributed that to his relapse [on drugs] at that time"; (4) respondent attended about five parenting classes but never completed the parenting program to which he was referred; and (5) respondent was "kicked out" of the inpatient adult rehabilitation center "after he relapsed" in November 2019 and then went to another inpatient treatment facility on two separate occasions but never completed those services. Dufner testified the agency was never close to placing the minor in respondent's care as he had not completed any of the recommended services.

¶ 14        Dufner testified about the events after respondent's last visit with the minor in May 2020. The agency, after not hearing from respondent, learned respondent had been incarcerated sometime between May and July 2020 for a probation violation and was then imprisoned at Graham Correctional Center. Dufner testified Williams attempted to reach out to respondent while he was imprisoned and invited him to an administrative case review by telephone. Respondent did not respond or join the case review. Dufner had no knowledge of respondent sending any cards, letters, or gifts to the minor while he was in custody.

¶ 15        Williams testified she had been the minor's caseworker since May 2020. In July 2020, Williams evaluated respondent on a service plan covering January through July 2020. Respondent rated unsatisfactory on all his recommended services. That same month, Williams learned from respondent's probation officer that respondent had been incarcerated. Williams prepared a service plan covering July 2020 to January 2021, which she mailed to the jail where respondent was incarcerated. Williams learned from respondent's probation officer that respondent had been imprisoned. Williams emailed and faxed the prison where respondent was imprisoned about an upcoming administrative case review in January 2021, which the prison indicated they

received. Respondent did not participate in the review. He rated unsatisfactory on all his services. Overall, respondent had not completed any of the recommended services or contacted the agency after he was incarcerated. Williams had not met with respondent and had no knowledge of respondent sending any notes, letters, or cards to the minor after he was in custody. On cross-examination by respondent's counsel, Williams agreed respondent had been housed at Graham Correctional Center.

¶ 16 Following William's testimony and the close of the State's case, respondent elected to testify. Respondent testified that at the time the minor was taken into DCFS care, he was residing at an inpatient adult rehabilitation center as part of a probation sentence which he received from a drug court program. Respondent testified his probation sentence was for a felony theft. He remained at the inpatient adult rehabilitation center for a year and a half and then sought treatment from another inpatient facility. On June 1, 2020, he was incarcerated and then later sentenced to two and a half years' imprisonment. Respondent believed he was imprisoned because "they wanted me out the pictured because of [the minor]." Respondent later acknowledged he was imprisoned based upon his prior theft. Respondent testified he was imprisoned at Vienna Correctional Center and he expected to be released on June 27, 2021.

¶ 17 Respondent acknowledged receiving a service plan and being aware of the recommended services. Respondent testified he was unable to complete the recommended services due to the restrictions imposed by the inpatient adult rehabilitation center, his probation officer, and the other inpatient facility where he sought treatment. Respondent also asserted the Covid-19 pandemic prevented him from completing the recommended services.

¶ 18 Respondent testified about completing various programs between May 2019 and April 2020, including programs related to parenting and substance abuse, and read aloud various

certificates in his possession reportedly indicating the same. Respondent further testified he no longer struggled with substance abuse. Respondent acknowledged he had not completed recommended outpatient substance abuse treatment as a result of his incarceration.

¶ 19 Respondent testified he purchased gifts for the minor, including a bike. Respondent had in his possession a picture of the minor on a bike. Respondent acknowledged having not given any gifts to the minor since he was imprisoned and explained he had not done so because he did not know the minor's address or phone number.

¶ 20 Respondent expressed a desire to be a parent to the minor and to engage in recommended services.

¶ 21 Based on this evidence, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motion to terminate parental rights.

¶ 22 C. Best-Interest Hearing

¶ 23 Immediately following the fitness hearing, the trial court held a best-interest hearing. The State again presented testimony from Alyssa Williams. The following is gleaned from that testimony.

¶ 24 The minor, who was four years old at the time of the best-interest hearing, had been placed with her foster family since she was two years old. She was bonded to her foster family, which included two foster parents and three foster siblings. The minor referred to her foster parents as "mom" and "dad." The foster family ensured the minor's needs were being met. The minor was receiving extra services because of her developmental delays. The foster parents were willing to provide the minor with permanency through adoption. Respondent's last visitation with the minor was in May 2020. The caseworker believed it would be in the minor's best interest to terminate respondent's parental rights.

¶ 25    Based on this information, the trial court, after considering the statutory best-interest factors, found it was in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 26    This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, respondent argues the trial court's finding he was an unfit parent is against the manifest weight of the evidence. In support of his argument, respondent (1) highlights the evidence of his efforts to engage in substance abuse treatment and parenting classes; (2) highlights the barriers he faced in completing the recommended services, including those resulting from his probation sentence, his participation in inpatient substance abuse treatment, the Covid-19 pandemic, and his later prison sentence; (3) highlights the fact he had "obviously" been drug free since being incarcerated; (4) discounts the testimony from Dufner about events prior to November 2019 as she was not a supervisor on the case during that time; (5) discounts the testimony from Williams as she never met with or spoke to him; and (6) discounts the testimony from both Dufner and Williams about his progress after he was imprisoned as they did not know where he was actually imprisoned. In response, the State maintains the court's finding respondent was an unfit parent was not against the manifest weight of the evidence.

¶ 29    In a proceeding to terminate a respondent's parental rights, the State must prove unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 30    In this case, the trial court found respondent was an unfit parent as defined in section

1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)). Section 1(D)(b) states a parent will be considered an "unfit person" if he or she fails "to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." In determining whether a parent showed a reasonable degree of interest, concern, or responsibility as to a child's welfare, the court must examine "the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278, 562 N.E.2d 174, 185 (1990).

¶ 31    While respondent highlights some evidence and discounts other evidence, the following is undisputed: (1) respondent did not maintain contact with the agency assigned to monitor the welfare of the minor while he was on probation, (2) respondent attended only seven visitations with the minor, (3) respondent violated his probation which resulted in him being incarcerated and then imprisoned, (4) respondent did not inquire about the welfare of the minor or his services after he was incarcerated, and (5) respondent did not attempt to send the minor any gifts, cards, or letters after he was incarcerated. Given these undisputed facts, we find the trial court's unfitness finding based on respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare is not against the manifest weight of the evidence.

¶ 32    As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 33                                    III. CONCLUSION

¶ 34    We affirm the trial court's judgment.

¶ 35    Affirmed.